IN THE COURT OF CRIMINAL APPEALS

OF TEXAS






 NO. PD-0175-13






SAMANTHA AMITY BRITAIN, Appellant


V.


THE STATE OF TEXAS







ON DISCRETIONARY REVIEW 

FROM THE FOURTH COURT OF APPEALS,

GUADALUPE COUNTY





 Womack, J., delivered the unanimous opinion of the Court.


 

 A jury convicted the appellant of manslaughter and injury to a child for recklessly causing
the death of her step-daughter. The Fourth Court of Appeals held that there was insufficient
evidence that the appellant was "aware of but consciously disregard[ed] a substantial and
unjustifiable risk" as required to prove recklessness. Accordingly, the Fourth Court reversed the
judgment of the trial court and entered a judgement of acquittal on both counts. (1) We granted the
State Prosecuting Attorney's petition for discretionary review to answer one question: Should the
Court of Appeals have reformed the verdict to the lesser-included offense of criminally negligent
homicide rather than rendering a verdict of acquittal? 

I

 The evidence at trial showed that around eight in the morning of February 4, 2008, the
complainant, eight-year-old Sarah Brasse, went to her school's nurse's office complaining of a
stomachache. The nurse had her lie down for a little while and then sent her to class because the
bell was about to ring. About an hour later, Sarah returned saying she still felt ill. She attempted
to use the bathroom, and she laid down again. After a little bit, Sarah reported that she was
feeling better and once again the nurse sent her back to class. 

 Around eleven a.m., Sarah came back a third time. This time she was visibly
uncomfortable and crying. The school nurse did a physical exam which showed no abnormalities.
However, because of the frequency of Sarah's visits and the fact that she was tearful, the nurse
decided to send her home. Both Sarah's father and the appellant, Sarah's step-mother, told the
nurse that Sarah was a "drama queen." Nonetheless, the appellant picked Sarah up from school a
little before noon, at which time Sarah appeared to be feeling better. 

 Sometime that evening, Sarah vomited for the first time. The testimony was unclear as to
whether she was able to eat dinner, but she did drink water. Sarah's brother heard Sarah vomit
two or three times throughout the night. The next morning, the appellant kept Sarah home from
school because she was still not feeling well. Throughout the day Sarah vomited some more and
developed diarrhea, but she continued to drink water. 

 Around six p.m. on February 5, 2008, the appellant found Sarah dead. Rigor had already
set in by the time paramedics arrived, but the appellant reported having checked on her only
fifteen or twenty minutes before. An emergency-room doctor estimated that the time of death was
around three p.m., but she admitted that several factors could have sped up rigidity and lividity.
Acute appendicitis was the cause of death. The appellant was charged with manslaughter on the
premise that her failure to take Sarah to the doctor led to the child's death.

II

 To determine if evidence is legally sufficient, a court must decide whether, "after
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt." (2) Under this
standard, evidence may be legally insufficient when the record contains either no evidence of an
essential element, merely a modicum of evidence of one element, or if it conclusively establishes
a reasonable doubt. (3)

 To prove manslaughter, the evidence must prove that the defendant recklessly caused the
death of an individual. (4) "A person acts recklessly ... when he is aware of but consciously
disregards a substantial and unjustifiable risk. ... The risk must be of such a nature and degree
that its disregard constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor's standpoint." (5)
Manslaughter is a result-oriented offense: the mental state must relate to the results of the
defendant's actions. (6) Criminally negligent homicide is a lesser-included offense of manslaughter
because it includes all the elements of manslaughter except for manslaughter's higher culpable
mental state. (7) To prove criminally negligent homicide the State must show that the defendant
negligently caused the death of an individual. (8) "A person acts with criminal negligence ... when
he ought to be aware of a substantial and unjustifiable risk. ... The risk must be of such a nature
and degree that the failure to perceive it constitutes a gross deviation from the standard of care
that an ordinary person would exercise under all the circumstances as viewed from the actor's
standpoint." (9) 

 In Bowen v. State, (10) we overruled Collier v. State, (11) which prohibited courts of appeals
from reforming convictions to lesser-included offenses that had not been either requested by a
party or included in the jury charge. (12) We reasoned that the "fact finder's determination of guilt
should not be usurped in the punishment phase if the evidence is legally sufficient to support a
conviction." (13) The State Prosecuting Attorney argues that the Court of Appeals erred under
Bowen by rendering a judgment of acquittal rather than reforming the judgment to a conviction
for the lesser-included offense of criminally negligent homicide. We disagree.

III While Bowen held that a court of appeals may reform a judgment to a lesser-included
offense, we have not held, and do not (under these facts) hold, that the court of appeals must do
so. Rule of Appellate Procedure 43.2(c) provides, "The court of appeals may: ... reverse the trial
court's judgment in whole or in part and render the judgment that the trial court should have
rendered."

 The statement that the court may render a judgment that the trial court should have
rendered is significant. As we stated in Bowen, the fact finder's determination should not be
usurped if the evidence is legally sufficient. (14) If the evidence proves a greater offense, it
necessarily proves the lesser offense, but of course if the evidence does not prove the greater
offense it also may not have proven the lesser. When the Court of Appeals held (and the State did
not contest) that there was no evidence of the required mental state (recklessness), it did not also
find that there was evidence of the lesser mental state (negligence).

 It is much easier to say that the lesser-included offense has been proven in cases in which
the evidence is legally insufficient only as to an aggravating element, as in Bowen. There the
State charged the defendant with misapplication of fiduciary property in an amount over
$200,000. (15) While the State proved the misapplication of fiduciary property, its indictment
alleged only one owner of the misapplied property. (16) Consequently, the State proved only that the
part owned by the named victim was misappropriated, not the entire amount. (17) In that case, it was
easy for the Court of Appeals to render a verdict for the lesser-included offense because there
was no question that the essential elements of the lesser crime were proven. It would be a similar
situation if the State charged someone with felony DWI and presented legally sufficient evidence
of the DWI conduct but not of the enhancing prior conviction. In such a situation it is easy to
strike the aggravating element and reform the judgment to reflect the crime without the
enhancement. 

IV

 In this case, the State has failed to prove an essential element, something that cannot be
merely eliminated from the conviction. In such cases an appellate court should not render a
judgment of conviction for a lesser-included offense unless there is proof beyond a reasonable
doubt of all elements of the lesser-included offense. On these facts, such a finding would have
been error. 

 The State urges us to assume that because the jury found (through its guilty verdict) that
the appellant acted recklessly, they necessarily also found that she acted negligently. This logic is
flawed because the State does not contest that the jury erred in its finding of recklessness.
Consequently, we cannot say (without a more thorough examination of the facts) that whatever
error led to the finding of recklessness did not extend to the entire evaluation of mental state. 

 To prove that the appellant acted negligently, the State would have had to show beyond a
reasonable doubt that the appellant ought to have been aware of the substantial and unjustifiable
risk posed by not taking Sarah to a doctor and that such a failure was a gross deviation from the
standard of care than any ordinary person would have exercised. The State failed to meet this
burden.

 Five medical professionals testified at the appellant's trial. There was conflicting and
mixed testimony concerning Sarah's level of risk, the cause of death, and the ease of diagnosis.
For instance, Sarah's school nurse, Dawn Bishop, testified that she would absolutely take her
child to a doctor if the child had been sent to the nurse several times and if the symptoms
worsened. However, she did not tell the appellant that Sarah should be taken to the doctor. The
appellant, unlike Bishop, is not a medical professional. One cannot impute to a layperson the
standard of care that Bishop would have exercised.

 The ER doctor, Gale Gregory-Lane, testified that she believed Sarah asphyxiated on her
own vomit. Such a death could happen quite quickly. Dr. Gregory-Lane stated that the initial
signs of appendicitis could also be indicative of any number of other medical problems, many of
which were less serious. She did testify that a parent should seek medical attention for a child
who has vomited for more than a 24 hour period, and sooner if the child appears dehydrated. The
evidence at trial showed that Sarah was most likely vomiting for less than 24 hours and was not
seriously dehydrated. Again, this evidence also was judged by the standard of care of a parent
who is also a medical professional. Consequently, it does not determine an ordinary person's
standard of care.

 The medical examiner, Dr. Elizabeth Peacock, testified that Sarah did not asphyxiate and
that the sole cause of her death was the acute appendicitis. Dr. Peacock testified that the infection
in Sarah's appendix probably had been developing for three or four days and that it would be
easy for a lay-person to confuse appendicitis with the stomach flu. 

 Two doctors testified for the defense: Dr. Gabriel Magraner, a gastroenternologist, and
Dr. William Anderson, a pathologist. These witnesses also disagreed on many of the details, but
both testified that Sarah's appendicitis manifested in an abnormal way and would have been
difficult to diagnose.

 Dr. Magraner testified that Sarah's symptoms were more consistent with a stomach flu
than with appendicitis and that, based on the nurse's report, it was unlikely anyone would have
expected a traumatic event in the next 24 hours. While he did testify that one should take
children to a doctor in most instances to err on the side of caution, he did not testify that any lay
person would know this or that it would fall below an objective standard of care not to seek
medical help. 

 Dr. Anderson, unlike the other witnesses, testified that Sarah suffered from active-chronic
appendicitis (rather than acute) and that the condition would have been developing for a
minimum of three or four days. According to Dr. Anderson, the disease ate away Sarah's pain
fibers so that she had an abnormally low level of pain. Further, he believed the condition would
have improved several times before it ultimately killed her. These two factors would have made
the condition nearly impossible to diagnose, especially for laymen.

 There was no evidence concerning the standard of care an ordinary person should be held
to or that showed the appellant should have been aware of the risk to Sarah. Given this lack of
evidence and the conflicting testimony of the medical experts concerning the ease with which
such a serious risk was identified, we cannot say that the State proved beyond a reasonable doubt
that the appellant acted with negligence. The Court of Appeals did not err in rendering a
judgment of acquittal, and we affirm that decision. 


Delivered: October 9, 2013.

Publish.
1. Britain v. State, 392 S.W.3d 244 (Tex. App. -- San Antonio 2012, pet. granted). 
2. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); Prible v. State, 175
S.W.3d 724, 729-30 (Tex. Cr. App. 2005). 
3. See Jackson, 443 U.S., at 320. 
4. Tex. Penal Code § 19.04. 
5. Tex. Penal Code § 6.03(c).
6. Schroeder v. State, 123 S.W.3d 398, 400-01 (Tex. Cr. App. 2003). 
7. Masterson v. State, 155 S.W.3d 167, 172 (Tex. Cr. App. 2005).
8. Tex. Penal Code § 19.05. 
9. See Tex. Penal Code §6.03(d).
10. 374 S.W.3d 427 (Tex. Cr. App. 2012).
11. 999 S.W.2d 779 (Tex. Cr. App. 1999). 
12. Bowen, 374 S.W.3d, at 432. 
13. Ibid.
14. Bowen, 374 S.W.3d at 432. 
15. Id., at 428.
16.  Ibid.
17. Ibid.